IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH RYNCARZ,

      Plaintiff,

                                   3:12-CV-1692-PK

                                   FINDINGS AND

v.                                RECOMMENDATION

JEFF THOMAS, ISREAL JACQUEZ, BRYAN
BIRKHOLZ, JASON RYAN, RONALD RICHTER,
JASON HENDERSON, and ROBERT McFADDEN,

      Defendants.

_____

PAPAK, Magistrate Judge:

      Plaintiff *pro se* Joseph Ryncarz filed this action against defendants Jeff Thomas, Isreal

Jacquez, Bryan Birkholz, Jason Ryan, Ronald Richter, Jason Henderson, and Robert McFadden

on September 19, 2012. By and through his complaint, Ryncarz alleges the defendants' liability

for the violation of his First Amendment right to reasonable accommodation of his religious

beliefs. This court has federal-question jurisdiction over Ryncarz' claim pursuant to 28 U.S.C. § 1331.

Now before the court is defendants Thomas, Jacquez, Birkholz, and Ryan's Federal Civil Procedure Rule 12(b) motion (#30) to dismiss Ryncarz' claim for defective service of process, for failure to exhaust available administrative remedies, and for failure to state a claim upon which relief can be granted.[1] I have considered the motion and all of the papers and pleadings on file. For the reasons set forth below, the moving defendants' motion should be granted to the extent premised on Federal Civil Procedure Rule 12(b)(6) and otherwise denied, Ryncarz' claim should accordingly be dismissed to the extent alleged against moving defendants Thomas, Jacquez, Birkholz, and Ryan for failure to state a claim, and the court should dismiss Ryncarz' claim to the extent alleged against nonmoving defendants McFadden, Richter, and Henderson *sua sponte* for lack of standing and for failure to state a claim on which relief can be granted.

## LEGAL STANDARDS

### I.    Insufficient Service of Process

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988), *citing Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982). This is not because service of process is itself a jurisdictional requirement, but rather because proper service is instead the vehicle by and through which exercise of jurisdiction is effected:

Before a federal court may exercise personal jurisdiction over a defendant, the

---

[1] Defendants Richter, Henderson, and McFadden have made no appearance in this action.

Page 2 - FINDINGS AND RECOMMENDATION

procedural requirement of service of summons must be satisfied. "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-445 (1946). Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

"However, 'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.'" *Id.*, *quoting United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). "Nonetheless, without substantial compliance with Rule 4 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'" *Id.*, *quoting Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).

A motion to dismiss for insufficient service of process is governed by Federal Civil Procedure Rule 12(b)(5). *See* Fed. R. Civ. P. 12(b)(5). Objections to the validity of service of process must be specific and must identify with particularity the manner in which the plaintiff has failed to satisfy the requirements for proper service. *See O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1400 (7th Cir. 1993). However, once service of process is properly challenged, "the party on whose behalf [service] is made must bear the burden of establishing its validity." *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981); *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). The courts enjoy broad discretion either to dismiss an action entirely for failure to effect service or to quash the defective service and permit re-service. *See SHJ v. Issaquah School District No. 411*, 470 F.3d

1288, 1293 (9th Cir. 2006), *citing Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th

Cir. 1976) ("the choice between dismissal and quashing service of process is in the district court's

discretion.").

## II.     Failure to Exhaust Available Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), incarcerated plaintiffs are required to

exhaust all administrative remedies available to them within the institutions in which they are

housed before bringing any federal action in connection with prison conditions, including such

actions brought under 42 U.S.C. § 1983:

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).  For purposes of the PLRA, actions brought with respect to "prison

conditions" include all actions brought to challenge isolated episodes of unconstitutional or

otherwise unlawful misconduct of any kind as well as prisoner petitions challenging conditions

of confinement. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Under the PLRA, the courts

lack discretion to consider claims challenging prison conditions, including claims for money

damages, except where such claims are filed following complete exhaustion of available

administrative remedies, without regard to the nature of the available administrative remedies

and without regard to the types of remedies available under such administrative grievance

procedures. *See id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 739, 740 n. 5, 741 (2001).

Inmates are not required to plead or demonstrate exhaustion before bringing prison-

conditions lawsuits. *Jones v. Bock*, 549 U.S. 199, 216 (2007).  To the contrary, an incarcerated

plaintiff's failure to satisfy the PLRA exhaustion requirement is an affirmative defense that is the

burden of the defendant in a prison-conditions lawsuit to raise and prove. *See id.* The courts of

the Ninth Circuit treat failure to exhaust administrative remedies "as a matter in abatement, . . .

subject to an unenumerated Rule 12(b) motion" to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108,

1119 (9th Cir. 2003). In deciding an unenumerated Federal Civil Procedure Rule 12(b) motion to

dismiss for failure to exhaust available administrative remedies, "the court may look beyond the

pleadings and decide disputed issues of fact." *Id.* at 1120. "If the district court concludes that the

prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim

without prejudice." *Id.*

     The PLRA exhaustion requirement is applicable to all persons who are incarcerated at the

time they file their civil actions, without regard to whether they may subsequently be released

from custody prior to resolution of their claims. *See Cox v. Mayer*, 332 F.3d 422, 424-428 (6th

Cir. 2003); *see also Talamantes v. Leyva*, 575 F.3d 1021, 1023-1024 (9th Cir. 2009).

## III.    Failure to State a Claim

     To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must contain more than a "formulaic recitation of the elements of a cause of action;" specifically,

it must contain factual allegations sufficient to "raise a right to relief above the speculative level."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the

speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts

that merely creates a suspicion [of] a legally cognizable right of action." *Id., quoting* 5 C. Wright

& A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R.

Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any

merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## FACTUAL BACKGROUND

### I.    History of the Parties' Dispute[2]

Ryncarz is an incarcerated prisoner who at all material times has been housed at the Federal Correctional Institution at Sheridan ("Sheridan"), a United States prison for male inmates

---

[2] Except as otherwise indicated, the following recital of material facts constitutes my construal of the evidentiary record for purposes of defendants' motion to the extent brought pursuant to Federal Civil Procedure Rule 12(b)(6).

operated in Oregon by the federal Bureau of Prisons (the "Bureau"). Ryncarz identifies himself

as a practicing member of the neopagan Druidic faith. As a Druid, Ryncarz recognizes four

seasonal festivals as the "highest, most Holy" days on the calendar of his faith, namely the Gaelic

seasonal festivals of Samhain (falling midway between the autumnal equinox and the winter

solstice), Imbolc (falling midway between the winter solstice and the spring equinox), Beltane

(falling midway between the spring equinox and the summer solstice), and Lughnasadh (falling

midway between the summer solstice and the autumnal equinox). Of these, Ryncarz identifies

Beltane, the festival marking the beginning of pastoral summer, as "the most important religious

cer[e]monial day on the Druid calendar."

It is the practice at Sheridan to permit inmate religious groups to celebrate a single

appropriate "ceremonial meal" per year for their members as identified by the religious

preference noted in each inmate member's file. Apparently because Sheridan Religious Services

does not distinguish among the various neopagan religious belief systems, Ryncarz' inmate file

lists his religious preference simply as "Pagan." It further appears that the religious preference of

adherents of the Wiccan, Asatru, and Odinist faiths (perhaps among other neopagan belief

systems) are likewise simply listed as "Pagan." Notwithstanding the foregoing, prior to 2012

Ryncarz was consistently permitted to hold his annual ceremonial meal on May 1, corresponding

with Beltane festival, while adherents of other neogpagan faiths were permitted to specify

different dates for their annual Bureau-provided ceremonial meals.

Beginning in 2012, Sheridan Religious Services modified its practice and began

providing an annual ceremonial meal to adherents of all "Pagan" faiths on the same day,

specifically June 21, corresponding with the summer solstice.[3]  Although the annual ceremonial

meal was offered only on June 21 to all of the Pagan groups without regard to their particular

belief systems, the adherents of the disparate Pagan faiths were not required to celebrate the

solstice together, but rather were afforded the opportunity to congregate with their coreligionists

in separate rooms to "eat, pray, and perform ceremonies."

In or around February 2012, Ryncarz formally requested a Druidic ceremonial meal to

take place on May 1, as had been his practice in previous years.  Sheridan Religious Services

denied Ryncarz' request and advised him of the new policy to provide all adherents of Pagan

faiths with their annual ceremonial meal on the same day, June 21.

Ryncarz promptly sought informal resolution of his complaint regarding Sheridan's

decision, filing an "Informal Resolution" form stating as follows:

> I, as a Druid, am being denied an annual cer[e]monial meal on May. 1st - my
> holiest religio[us] day – and being force[d] to eat with Asatru & Odinists at
> Summer Solstice (21 June) – their highest holy day.  My holy days are completely
> different from theirs.

Ryncarz requested that Sheridan staff take the following action to resolve his complaint:

> Allow my annual meal to be held on May 1st as it has been done each & every
> year in the past.  I do not wish[] to be lumped in with other groups.

Ryncarz indicated that he had taken the following actions prior to filing the form in attempting to

resolve his complaint:

> Turn in request for meal to Chapel in early February – it was denied by [defendant
> Sheridan Religious Services] Ch[a]p[lain] Hen[d]erson.  Talked with [defendant
> Sheridan Religious Services] Ch[a]p[lain] Richter who will lump a[ll] pagans
> together even though we have different Gods & holy days.

---

[3] Ryncarz acknowledges that the solstices and equinocti constitute "minor High Holy
Day(s)" for members of his faith.

Defendant Ryan, a correctional counselor at Sheridan, responded to Ryncarz' informal complaint as follows:

> The chaplain may arrange for inmate religious groups to have one appropriate ceremonial or commemorative meal each year for their members as identified by the religious preference reflected in the inmate's file.  An inmate may attend one religious ceremonial meal in a calendar year.  Your current religious preference is Pagan.

Having received a response with which he was unsatisfied, Ryncarz promptly availed himself of Sheridan's formal grievance procedures.[4]  Ryncarz' first attempt to grieve the decision was made on March 27, 2012, when Ryncarz filed a BP-9 grievance form together with a separate attachment stating as follows:

> My First Amendment right[s] to practice my religion are being denied me at FCI Sheridan.  I am a practicing Druid.  However, Religious Services wishes to lump all Pagans into a single group for purposes of celebrating our ceremonial meal.  Religious Services does not make the Catholics or Protestants have their meal together – even though they all worship the same God.  Nor do they make the Muslims, Nation of Islam and Mooris[h] Science [practitioners] eat together when they all worship Allah.  However, the Northern Asatru and Odinists along with I, a Celtic Druid, am [sic] being forced to eat together when we have completely different Gods & Goddess[es] and totally different High Holy Days.  It is belittling to my religious beliefs [to] forc[e] on me . . . beliefs and traditions I do not hold to nor care to break bread with.

---

[4]  Sheridan, like all Bureau of Prisons correctional facilities, maintains an inmate Administrative Remedy Program to permit inmates to bring complaints regarding the circumstances of their confinement to the attention of prison officials with authority to respond appropriately to valid complaints.  Pursuant to Administrative Remedy Program procedures, inmates must first attempt to resolve their complaints informally before invoking the formal grievance process.  In the event a complaint cannot be resolved informally, the complainant must present the complaint to prison staff as a formal grievance via the "BP-9" form.  If dissatisfied with the response to the initial grievance, inmates may appeal the response to the Bureau's Regional Director using a "BP-10" form.  If dissatisfied with the Regional Director's response, inmates may make final appeal from that response to the Bureau's General Counsel via the "BP-11" form.  Exhaustion of the Administrative Remedy Program's procedure requires an inmate to seek resolution of his complaint at all three levels of the formal grievance process.  See 28 C.F.R. §§ 542.10 et seq.

Sheridan staff immediately denied this grievance on the procedural ground that the complaint was not stated in its entirety on the BP-9 form itself. Ryncarz promptly refiled his grievance on a BP-9 form, using substantially identical language to that appearing on his initial grievance.

Defendant Thomas, Warden at Sheridan, responded as follows:

> This is in response to your Request for Administrative Remedy received on April 4, 2012, wherein you allege your 1st amendment rights to practice your religion are being denied at FCI Sheridan because the pagan inmates will have their one annual ceremonial meal on the summer solstice.
>
> The Bureau of Prisons uses Preference categories in managing various religious groups. Examples of this would be the Protestant group which would include members of the Anglican, Lutheran, Methodist, Pentecostal and non-denominational churches[,] or the Jewish group which has members of the Reformed, Conservative and Orthodox traditions. To arrange meals and ceremonies for all these groups would pose a substantial burden on the institution and especially on the Food Services Department. To reduce this burden the Pagan groups will have their ceremonial meal on the summer solstice in the chapel. The Asatru, Odinist, Druidic, Wiccan or other inmates may congregate in separate rooms to eat, pray and perform ceremonies. Other religious beliefs are not being forced upon you. You are free to choose to participate (or not) in this event.

Ryncarz promptly appealed Thomas' response to the Bureau's Regional Director as follows:

> The response, against my 1st Amendment rights being denied, is completely wrong. It states in part: "Other religious beliefs are not being forced upon you." I practice Druidry. As a Druid I recognize four (4) Holy days (sabbats). These are: Samhain (31 Oct-1 Nov), Imbolc (1-2 Feb), Beltaine (30 April-1 May) & Lughnasad (1-2 Aug). The Summer Solstice (20-23 June) is plainly not a Holy day I recognize. To force me to celebrate on this day would be like having Native Americans sweat only on Christmas or having Muslims have Ramadan at Eastertime or telling the Odinists they must do their Yule festival during Hanukkah. To force me to celebrate at the Solstice instead of having my ceremonial meal on my Holy day is wrong and violates my freedom of religion.

The Bureau's Regional Director at the time, defendant McFadden, responded as follows:

> This is in response to your Administrative Remedy Appeal of the Warden's decision dated April 12, 2012. You claim your First Amendment rights are being denied because the ceremonial meal for Druid inmates is scheduled at the summer

Solstice.  Your complaint does not request any specific remedy.

Your appeal has been investigated.  Our investigation indicates there are four major and four minor "High Days" in the Druid calendar.  The summer solstice is one of the four minor "High Days."

We find those who follow the Druid religious tradition are not required by their religion to have an annual ceremonial meal, and hence, there is no specific day on which they must have a ceremonial meal.  Nevertheless, we find . . . the institution provides you with a ceremonial meal at the summer solstice which you and other Druid inmates may attend or not.  We find you are provided a separate room for your ceremonial meal.  We do not find you are forced to attend this meal.

In addition we find that you are able to pray and worship in your living quarters.  You may receive religious visitors of your faith tradition.  You may order religious publications in accordance with policy.  And you may meet with other Druid inmates twice each week in the Chapel for regularly scheduled services.  Hence, we do not find your First Amendment rights are being denied.

Ryncarz promptly filled out a BP-11 form, the appropriate form for appealing the Regional

Director's response to the General Counsel at the Central Office, as follows:

I concur with the Regional Director that the Summer Solstice is a <u>minor</u> High Holy Day for Druids.  That is not in question.  What I, as a Druid, request [is] to be allowed to have my cer[e]monial meal on a <u>major</u> High Holy Day (Beltaine or Samhain) different from Asatru & Odinist.  I have always, until this year, had my annual cer[e]monial meal on Beltaine (1 May).  My deities are completely different than Asatru & Odinist – hence I believe that Druids need to be sep[a]rate from other Pagans and outside the general "umbrella."

Ryncarz offers his own sworn testimony that he mailed his BP-11 appeal to the address of the

General Counsel at the Bureau's Central Office.  Defendants offer the sworn testimony of

Jennifer Vickers, a paralegal in the Bureau's Western Regional Counsel's Office, that Ryncarz'

BP-11 appeal was never logged in as received by the Office of the General Counsel, and was

never processed.

## II.    Relevant Procedural History

Ryncarz filed this action against named defendants Jeff Thomas, Isreal Jacquez, Bryan Birkholz, Jason Ryan, Ronald Richter, Jason Henderson, and Robert McFadden on September 19, 2012.  On September 27, 2012, Ryncarz paid his filing fee in full.  Ryncarz requested that the U.S. Marshals Service effect service of process on the defendants, and paid the Marshals' requested fees for that purpose.

On November 1, 2012, executed return of service was filed separately as to defendant Jacquez, as to defendant Ryan, and as to "all defendants" to the extent amenable to process through service on the U.S. Attorney for the District of Oregon.  On November 14, 2012, executed return of service was again filed as to "all defendants" to the extent amenable to process through service on the U.S. Attorney General.

On November 26, 2012, executed return of service was filed as to defendant McFadden. However, the service returned indicates that service was effected on attorney Jason White on November 6, 2012, rather than on McFadden personally.  Defendants assert, without supporting evidence, that McFadden retired from federal service in June 2012, approximately five months prior to attempted execution of service.

That same day, unexecuted return of service was filed as to defendant Richter, indicating that the Marshals Service was unable to locate Richter at either of two addresses provided by Ryncarz.  Executed return of service was filed as to defendants Birkholz and Thomas on December 12, 2012.

Moving defendants Thomas, Jacquez, Birkholz, and Ryan filed the motion to dismiss now before the court on February 6, 2013.  Moving defendants' motion was taken under

advisement March 20, 2013.

On March 28, 2013, executed return of service was filed as to defendant Henderson. As of the date hereof, other than service executed as to "all defendants" to the extent amenable to process through service on the U.S. Attorneys, executed return of service has not been filed as to defendant Richter.

## ANALYSIS

### I.    Ryncarz' Claim

Ryncarz does not specify the procedural mechanism through which his constitutional freedom of religion claim is brought. The moving defendants characterize Ryncarz' claim either as brought under a *Bivens* theory,[5] or, in the alternative, as arising under the Religious Freedom Restoration Act (the "RFRA").

I note in this connection that Ryncarz does not seek money damages from any defendant, but rather seeks injunctive relief only, as follows:

> As a Druid I expect and demand to be allowed to pursue my inalienable [Fir]st Amendment [r]ight to freedom to practice, worship, and participate in my chosen religion. I expect and demand to be allowed to celebrate my highest, most Holy of cer[e]monial meals on time and in reasonable privacy. As a Druid I expect to be excluded from the [Bureau]'s "umbrella of Paganism" when it comes to my cer[e]monies and religious practices.

---

[5] Although there is no express statutory cause of action available to private citizens subjected to so-called "constitutional torts" by federal employees or others acting under the color of federal law, the United States Supreme Court in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) recognized an implied cause of action for money damages under the Fourth Amendment for an injury caused by a federal agent acting under color of federal authority. *See Bivens*, 403 U.S. at 389. Since *Bivens*, the federal courts have recognized similar implied causes of action in connection with a broad range of constitutional torts, including the violation of an incarcerated prisoner's rights under the First Amendment, *see Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986).

Because it is clear that the only relief Ryncarz seeks is an injunction to remedy his complained-of constitutional deprivation, I conclude that Ryncarz does not intend to proceed on a *Bivens* theory, which is applicable only to claims for money damages.

It is well and long established that plaintiffs may seek, and that the federal courts are authorized to grant, injunctive or other equitable relief (specifically as opposed to money damages) to protect rights safeguarded by the Constitution and/or to enjoin unconstitutional government action. *See, e.g., Bell v. Hood*, 327 U.S. 678, 684 (1946); *Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 866 (9th Cir. 2011) ("Injunctions may be sought, for example, to enforce the Constitution itself; courts need no statutory authorization to undertake constitutional review"). I therefore construe Ryncarz' equitable claim as arising directly under the First Amendment's prohibition against federal restraint on the free exercise of religion. However, because I agree with the moving defendants that Ryncarz' claim could be colorable under the RFRA, I assume for purposes of the following discussion that Ryncarz intends to proceed with both a direct constitutional claim and with an alternative RFRA claim.

II.   *Sua Sponte* **Dismissal of Nonmoving Defendants**

Where a plaintiff lacks constitutional standing to bring a claim, the federal courts lack jurisdiction to award relief on or to decide the merits of the plaintiff's claim. *See e.g., Allen v. Wright*, 468 U.S. 737, 750-751 (1984). The Supreme Court articulated the three elements necessary for constitutional standing in *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992). Under *Lujan*, a plaintiff must have suffered an injury in fact, there must be a causal connection between the injury and the conduct of the defendant, and it must be likely that the injury can be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-561.

As noted above, Ryncarz seeks only injunctive relief to require Sheridan officials to provide him with an opportunity to celebrate his annual ceremonial meal at Beltane, in the sole company of fellow Celtic revivalists, rather than on the summer solstice in the company of Norse revivalists. In consequence, it is clear that judgment in his favor could afford no possibility of correcting the complained-of constitutional deprivation to the extent his claim is alleged against any defendant not currently enjoying authority to effect changes to the terms and conditions of inmate incarceration at Sheridan. It follows that Ryncarz lacks standing to bring his claim to the extent it is alleged against any such defendant.

Also as noted above, defendants assert that defendant McFadden retired from federal service before being served with Ryncarz' complaint, but offer no evidence in support of their assertion. Notwithstanding defendants' failure to provide evidentiary support for their assertion, I may properly take judicial notice that the current Regional Director of the Bureau of Prisons for its Western Region is Dr. Juan Castillo, who has been in that position since July 29, 2012. From this judicially noticed fact I infer that by not later than July 29, 2012, defendant McFadden ceased to hold the position of Regional Director of the Bureau of Prisons for its Western Region, and is no longer an employee of the Bureau with authority to modify the terms and conditions of incarceration there.

Analysis of the parties' submissions establishes that Ryncarz advised the Marshals Service that defendant Richter had retired by not later than the date on which Ryncarz requested that the Service effect service on him. Similarly, although the Marshals Service was ultimately able to locate and serve defendant Henderson, analysis of the parties' submissions tends to establish that Henderson was served at his current place of employment, the federal prison in

Florence, Colorado. I therefore conclude that neither Richter nor Henderson currently has authority to modify the terms and conditions of incarceration at Sheridan.

A trial court may properly dismiss a claim *sua sponte*, with or without notice to its proponent, "where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). Because Ryncarz cannot establish that his complained-of injury could be amenable to redress by a favorable judgment on his claim to the extent it is alleged against McFadden, Richter, or Henderson, Ryncarz lacks standing to prosecute his claim as to those defendants. I therefore recommend that the court dismiss Ryncarz' claim *sua sponte* to the extent alleged against defendants McFadden, Richter, and Henderson.[6]

## II.    Moving Defendants' Motion

The moving defendants seek dismissal of Ryncarz' claim for insufficiency of service of process, for failure to exhaust available administrative remedies, and for failure to state a claim. I address each theory of dismissal in turn.

### A.    Insufficient Service of Process

Although the moving defendants' argument is not a model of clarity, the moving defendants appear to seek dismissal of Ryncarz' claim to the extent alleged against nonmoving defendants McFadden, Richter, and Henderson only, and in the alternative, that the court grant

---

[6] I note that (as discussed in greater detail below) the moving defendants seek dismissal of Ryncarz' claim on jurisdictional grounds to the extent alleged against these same three (nonmoving) defendants on a theory of insufficient service of process. I further note that Ryncarz has already been put to considerable personal expense in his efforts to date to perfect service of process on these defendants, and that, in light of the foregoing discussion as well as the following discussion of the merits of Ryncarz' claim, all such expense is highly likely ultimately to prove to have been regrettably futile *ab initio*. Thus *sua sponte* dismissal of Ryncarz' claim as to these defendants for lack of redressibility would have the virtue of sparing Ryncarz further such futile expense.

Page 16 - FINDINGS AND RECOMMENDATION

Ryncarz a period of 120 days in which to perfect service against these defendants. In light of my

recommendation, *supra*, that the court dismiss *sua sponte* Ryncarz' claim for lack of

redressibility to the extent alleged against these defendants, the court need not consider whether

the moving defendants may appropriately prosecute the proffered argument on behalf of the

nonmoving defendants, and should instead deny as moot defendants' motion to the extent

premised on insufficiency of service on McFadden, Richter, and Henderson.

     B.     **Failure to Exhaust Available Administrative Remedies**

     As noted above, under the Prison Litigation Reform Act incarcerated plaintiffs are

required to exhaust all administrative remedies available to them within the institutions in which

they are housed before bringing any federal action in connection with prison conditions. *See* 42

U.S.C. § 1997e(a); *see also Wyatt*, 315 F.3d at 1120; *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d

1056, 1061 (9th Cir. 2007). Under the PLRA, the courts lack discretion to consider claims

challenging prison conditions, including claims for money damages, except where such claims

are filed following complete exhaustion of available administrative remedies, without regard to

the nature of the available administrative remedies and without regard to the types of remedies

available under such administrative grievance procedures. *See Porter*, 534 U.S. at 524, *citing*

*Booth*, 532 U.S. at 739, 740 n. 5. For purposes of the PLRA, "complete exhaustion" of available

administrative remedies requires that an inmate "complete the administrative review process in

accordance with [all] applicable procedural rules, including deadlines. . . ." *Marella v. Terhune*,

568 F.3d 1024, 1027 (9th Cir. 2009), *quoting Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

     The moving defendants acknowledge that Ryncarz properly satisfied his obligations

under the Bureau's Administrative Remedy Program in connection with the complaint underlying

his claim at the informal level, the formal grievance level, and the first level of administrative appeal. However, on the grounds of Vickers' testimony, discussed above, that Ryncarz' second-level grievance appeal was not logged or processed by the Bureau's Office of the General Counsel, moving defendants argue that Ryncarz did not completely exhaust the administrative remedies available to him.

As noted above, Ryncarz, who retained copies of all of his grievances and complaints regarding the decision to provide all Pagan inmates with a ceremonial meal on the summer solstice, provides his own sworn testimony that he filled out a second-level grievance appeal and mailed it to the appropriate address. In light of Ryncarz' testimony, his prompt and thorough compliance with all other applicable Administrative Remedy Program procedures, and the absence of any incentive for Ryncarz to prepare and address his final requisite appeal without submitting it, I find that the moving defendants have not satisfied their burden to establish Ryncarz' failure to exhaust available administrative remedies. To the contrary, the evidence suggests that Ryncarz diligently complied with his obligations under the Administrative Remedy Program. The moving defendants' motion should therefore be denied to the extent premised on failure to exhaust.

### C.    Failure to State a Claim

By and through his complaint, Ryncarz complains of: (i) not being permitted to take his single, annual, Bureau-provided ceremonial meal on his preferred date of May 1, and (ii) being afforded only the option of taking his ceremonial meal on the same date as adherents of unrelated faiths he views as "diametrically opposed" to his own "in theory and practice," and in near physical proximity to those groups' celebrations. Neither of the complained-of restrictions

amounts to an unconstitutional restraint of Ryncarz' right of free exercise.

Ryncarz likens Sheridan's policy of requiring all so-described "Pagan" groups to take their ceremonial meal either in the same chapel on the summer solstice or not at all to "like having Native Americans sweat only on Christmas or having Muslims have Ramadan at Eastertime or telling the Odinists they must do their Yule festival during Hanukkah." I agree with the broad gravamen of Ryncarz' characterization; indeed, Sheridan's policy is not qualitatively different from, for example, requiring adherents of all of the abrahamic faiths – Judaism, Christianity, Islam, and Bahá'í Faith – to choose between not celebrating any ceremonial meal or celebrating one only on the first day of Passover. The problem with Ryncarz' argument is that neither the actual restriction placed by Sheridan on so-described Pagan inmates nor the counterfactual restriction on abrahamic ceremonial meals would constitute a significant governmental restraint on the free exercise of religion: in the absence of any showing that any of the faiths involved affirmatively prohibit ceremonial meals on the assigned day, or celebrating in near physical proximity to celebrants of other faiths, institutional imposition of a common feast-day does not require an inmate to violate any religious precept or tenet.

To state a free-exercise claim under the First Amendment, an incarcerated plaintiff must show that the incarcerating institution "burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (footnote omitted). The United States Supreme Court has held that the First Amendment's guarantee of the right to free exercise unconstitutionally burdened when government action "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,"

*Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981), or forces the adherent to "choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).  Here, Ryncarz' right to free exercise has not been so burdened.  Ryncarz neither alleges nor argues that Druidic practice requires a ceremonial meal on Beltane or on any other day, that Druidic practice forbids celebration of the summer solstice, or that any precept of Druidry prohibits taking a ceremonial solstice meal in near physical proximity with adherents of other faiths.  Ryncarz may decline the opportunity to celebrate the summer solstice with a Bureau-provided meal and may likewise refrain from observing Beltane with a ceremonial meal without doing violence to his religious beliefs.

Moreover, the Bureau has provided a justification for its policy that is at least reasonably related to a legitimate penological interest, namely the logistical efficiencies obtained by assigning all Pagan groups a single, common feast day.  For the foregoing reasons, I find that Ryncarz cannot state a First Amendment free-exercise claim based on Sheridan's ceremonial-meal policy for members of Pagan faiths.

Finally, the foregoing analysis is sufficient to establish that Ryncarz cannot state a claim under the RFRA.  "Any burden imposed on the exercise of religion short of that [proscribed by the free-exercise clause of the First Amendment] is not a 'substantial burden' within the meaning of RFRA." *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1070 (9th Cir. 2008).  In consequence, I further find that Ryncarz cannot state an RFRA claim arising out of the complained-of restriction on his right to a ceremonial meal.

Because Ryncarz has failed to state a claim upon which relief can be granted, the moving defendants' motion should be granted under Federal Civil Procedure Rule 12(b)(6), and Ryncarz' claim should be dismissed to the extent alleged against moving defendants Thomas, Jacquez, Birkholz, and Ryan. For the same reasons, the court should dismiss Ryncarz' claim *sua sponte* to the extent alleged against nonmoving defendants McFadden, Richter, and Henderson, notwithstanding the fact that the court has not yet made any determination as to whether it may properly exercise personal jurisdiction over the nonmoving defendants. *See Omar*, 813 F.2d at 991.

## CONCLUSION

For the reasons set forth above, the moving defendants' motion (#30) should be granted to the extent premised on Federal Civil Procedure Rule 12(b)(6) and otherwise denied, Ryncarz' claim should be dismissed with prejudice to the extent alleged against moving defendants Thomas, Jacquez, Birkholz, and Ryan for failure to state a claim, and the court should dismiss Ryncarz' claim with prejudice to the extent alleged against nonmoving defendants McFadden, Richter, and Henderson *sua sponte* both for lack of standing and for failure to state a claim on which relief can be granted. Final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 14th day of May, 2013.

Honorable Paul Papak
United States Magistrate Judge